GENERAL MOTORS ACCEPTANCE CORPORATION *v.* HICKS.

4-3420

Opinion delivered April 16, 1934.

*Dixon & Williams* and *W. A. Leach,* for appellant.

*A. G. Meehan* and *John W. Moncrief,* for appellee.

SMITH, J. On May 26, 1930, Mrs. G. P. McDonald, who resided in Brinkley, purchased a Frigidaire from J. E. Freeman, a local dealer at Helena. The purchase price was $598, of which $64 was paid in cash. The balance was to be paid in monthly installments of $22.25 each, the first payment being due June 26, 1930. The purchase was made under a written conditional sales contract, whereby the title was reserved by the seller until the purchase money had been fully paid, and the right was reserved upon default in any payment to retake the possession of the Frigidaire, wherever found and without notice to the purchaser.

This contract of sale was executed upon a printed form, which was prepared in contemplation of its assignment to the General Motors Acceptance Corporation, hereinafter referred to as the corporation, and that assignment was made by Freeman, who guaranteed that

deferred payments would be made, in consideration for which assignment and guaranty the dealer was paid his profit in the transaction, and the appellant corporation became the owner of the sales contract retaining the title and giving the right to repossession upon default in payments. ·

The Frigidaire was purchased for and used in a store in Brinkley in which Mrs. K. E. Hicks had an interest, and she testified that she made most of the payments while she and Mrs. McDonald were jointly interested in the Frigidaire, and that she later acquired Mrs. McDonald's interest, after which time she alone made payments. The sales contract provided that the purchaser should not resell the Frigidaire except with the consent of the owner of the sales contract, and that a transfer charge of ten dollars should be paid for that consent. Upon being advised that Mrs. McDonald had sold her interest in the Frigidaire to Mrs. Hicks, the corporation's general agent at Memphis, Tennessee, wrote Mrs. Hicks and demanded payment of the ten-dollar transfer charge. Upon being shown this letter, Freeman advised Mrs. Hicks that the transfer charge would be waived, and it was not paid, nor was further demand of payment made.

The sales contract prohibited the removal of the Frigidaire from Brinkley, the place of its original installation, without the consent of the owner of the contract, but Freeman gave this consent to Mrs. Hicks, and the Frigidaire was removed to Clarendon by her and installed there. She discontinued the business in connection with which the Frigidaire was used and placed it in storage. Payments were made and accepted after the removal of the Frigidaire to Clarendon, and the testimony sustains the finding by the jury that, if Freeman did not possess the authority which he exercised, his unauthorized acts had been ratified and confirmed by the corporation.

The payments were not made on or before the 26th of each month as the sales contract required, and Mrs. Hicks testified that Freeman agreed she might have a month's indulgence, that is, that the payments thereafter

to be made might each be made one month later than when due. Several, in fact, a number of payments appear to have been so made, which were accepted by the corporation, and were duly credited. On December 29, 1931, Mrs. Hicks deposited in the mails at Clarendon a postoffice money order for $22.25 to cover the payment which, according to the sales contract, was due November 26. This payment was accepted and credited by the corporation. In the forenoon of January 26, 1932, Mrs. Hicks remitted from Clarendon another postoffice money order for $22.25, which, in due course of the mails, would have been received by the corporation at its Memphis office not later than January 27. The corporation had from time to time written Mrs. Hicks about her payments, but in none of those letters had it been intimated that the corporation would take possession of the Frigidaire if the payments were not made in strict accordance with the sales contract.

On the afternoon of January 27, after the money order had been mailed in the forenoon of the preceding day, an agent of the corporation broke into and entered the building where the Frigidaire was stored and removed it. This was done without demand or notice to Mrs. Hicks. Through the failure to properly lock the building where the Frigidaire had been stored other trespassers entered the building and committed other trespasses, removing certain articles of personal property belonging to Mrs. Hicks which were also stored there. These consisted of lumber, a meat pan, a meat saw, knives, and a pair of scales, alleged to be worth $102.50. The corporation had no interest in any of this property except the Frigidaire, and removed nothing else. At the time of taking possession of the Frigidaire, there was a balance of $66.75 due, and it was sold to Mrs. Hicks' son by the corporation for that amount. This son testified that he bought the Frigidaire for his own, and not for his mother's, account, and that she was not advised of nor interested in his purchase. Mrs. Hicks gave testimony to the same effect.

Mrs. Hicks brought suit for the conversion of the Frigidaire, and for the loss of the other personal prop-

erty, and prayed judgment for $612.50, which was alleged to be the value of the property, less the balance due the corporation. There was a verdict and judgment in Mrs. Hicks' favor, from which is this appeal. The verdict awarded $321.95 on account of the Frigidaire and $12.50 for the other property.

The court submitted the issues raised by the testimony herein summarized, over the objection of the appellant corporation, under an instruction reading as follows:

"The contract by which defendant held title to the motor and coils required plaintiff to pay certain installments of the purchase price at certain times, and under the contract defendant had the right to take possession of the property on a default in payment of any installment, unless the defendant had waived that provision of the contract by agreeing to an extension of the time, and unless it had established a long course of dealing in disregard of that provision of the contract and payments had been made pursuant to such agreed extension and such established course of dealing, if any. Plaintiff had not made her payment of installments according to the terms of the contract, so the plaintiff must prove a waiver of such terms of the contract in order to recover. The mere fact that plaintiff offered to accept a return thereof would not necessarily defeat her right, if any, under the evidence and instructions of the court to recover. If the defendant, without notice, wrongfully and unlawfully broke and entered the building in which property of the plaintiff, if any, was lawfully stored, and, if at such entry the building in which it was stored had been and was securely locked, closed and fastened, and if defendant negligently and wrongfully and without authority left the building open and unlocked and left the property of plaintiff, if any, unprotected and open to trespassers, and if, because of such acts and conduct of defendant, if any, any property of plaintiff was taken away and lost to plaintiff, without any fault on the part of plaintiff, then defendant would be liable to plaintiff for damage, if any, thereby caused to plaintiff by defendant.

"If you find for plaintiff on account of the Frigidaire equipment, motor and coils, you may so state in your verdict, and there state the amount of your verdict; and, if you find for the plaintiff as to the other property, you should so state in your verdict, and state the amount you find. In other words, your verdict may show the amount of the two separate items, in the event you find for the plaintiff.

"If you find for the plaintiff, you may add interest to your verdict at the rate of 6 per cent. per annum from July 1, 1932." This was the date of the conversion.

We think there was no error prejudicial to the appellant corporation in this instruction. The court gave correct instructions on the measure of damages, and directed the jury, if there was a finding for the plaintiff, to allow credit for any balance of purchase money unpaid. The court also charged the jury that: "If you find from the testimony that Freeman had the authority to grant extension on monthly payments, and the company ratified it, then the company would be bound by his acts." This instruction is a correct application of an elementary principle of the law of agency, except, of course, that Freeman's acts would not require ratification if he acted with authority.

It is conceded by appellee that the vendor may grant an extension of time, and may change the means of payment without waiving his reservation of title, provided he does not cancel the debt thus secured. *Hollenberg Music Co.* v. *Bankston,* 107 Ark. 337, 154 S. W. 1139; *Summers* v. *Carbondale Machine Co.,* 116 Ark. 252, 173 S. W. 194. It is conceded also that, if the right to repossess the Frigidaire existed at the time that action was taken, the fact that appellant corporation wrongfully entered the building would not make it liable for the value of the Frigidaire as for conversion, whatever the liability for the trespass may have been. *Berger* v. *Miller,* 86 Ark. 58, 109 S. W. 1015. See also chapter on Sales, 55 C. J., page 1288, and cases there cited.

But it is also the law, as was said by the Supreme Court of Washington in the case of *Lundberg* v. *Switzer,*

146 Wash. 416, 263 Pac. 178, that (to quote a headnote):
"The right to forfeit a conditional sales contract for
overdue payments cannot be exercised without demand
and a reasonable opportunity to comply, after there has
been a waiver of strict performance by the acceptance of
delayed payments." This case is annotated in 59 A. L. R.
131, where many other cases to the same effect are cited.

The testimony abundantly supports the finding, if,
indeed, it is not undisputed, that there had been a waiver
of strict performance by the acceptance of delayed pay-
ments. Indeed, according to Mrs. Hicks' testimony, she
was not in arrears with her payments, because of the
one-month extension granted her by Freeman. This be-
ing true, the corporation should have given reasonable
notice of its intention to thereafter demand strict com-
pliance, and must have given reasonable time in which to
comply, before taking possession of the Frigidaire. How-
ever, there was no notice that strict performance would
be required, and the instruction set out above correctly
states the principle of law upon which the corporation
was held liable for conversion.

This principle is that one may lose the right to en-
force a contract strictly according to its terms if he in-
duces the other party to the contract to believe that he
will not strictly enforce it, unless, after inducing this
belief, he gives reasonable notice that the indulgence will
not be continued and a reasonable opportunity is given
to comply after such notice.

This principle is not confined in its application to
questions arising under conditional sales contract. It was
recently applied in the case of *Columbian Mutual Life
Ins. Co.* v. *High,* 188 Ark. 798, 67 S. W. (2d) 1005, which
involved the payment of a monthly insurance assessment,
which the insurer had been accustomed to accept at a
later date than was provided for in the contract of insur-
ance. We there said: "After such custom had been
established, appellant could not change the custom and
lapse the policy where payment was made within the
customary time, without notice of its intention to abandon
the custom. *Sovereign Camp W. O. W.* v. *Condry,* 186
Ark. 129, 52 S. W. (2d) 638."

Other questions are discussed in the briefs which are of minor importance. One of these is that there was no proper and sufficient proof of the market value of the Frigidaire at the time and place of the conversion. This assignment of error may be disposed of by saying that the testimony shows the market value of this Frigidaire, when new, to have been $598, and that it was in sound and undamaged condition, and was described by the witnesses as being as good as new. Moreover, the purchaser of the Frigidaire testified that he knew its market value, which he stated to be largely in excess of its value as found by the verdict of the jury.

There appears to be no error prejudicial to appellant, and the judgment must therefore be affirmed, and it is so ordered.