COMMERCIAL CREDIT COMPANY, INC. *v.* RAGLAND.

4-3484

Opinion delivered June 4, 1934.

*Barber & Henry* and *M. F. Elms,* for appellant.

*A. G. Meehan* and *John W. Moncrief,* for appellee.

SMITH, J. On July 2, 1931, H. S. Ragland purchased from C. D. Conrey Company, a domestic corporation domiciled at Stuttgart, a new automobile for $610, of which $260 was paid in cash. The balance was to be paid in 12 monthly installments, evidenced by promissory notes,

each for $33.46, the first of which matured on August 2, 1931, and one on the second day of each month thereafter until all had been paid. A sales contract or agreement was entered into, to which the notes referred, and the title was retained until all the notes and the interest thereon had been paid in full. It was provided that in case of default to make payments promptly the possession of the car might be retaken, wherever found, without notice to or demand upon the purchaser, and the car sold, either publicly or privately, and the proceeds of sale applied to the notes, which also recited the retention of the title. On the day of the execution of the contract of sale and the notes the Conrey Company, for a valuable consideration, assigned them to the Commercial Credit Company, Inc., hereinafter referred to as the Credit Company, a domestic corporation domiciled at Little Rock, and having no place of business or agent elsewhere. Installment payments were made as follows: The August 2d payment was made August 11; the September 2d payment was made October 7; the October 2d payment was made November 7; the November 2d payment was made November 30; the December 2d payment was made January 9, 1932; and the January 2d payment was made February 5. The Credit Company, the assignee and holder of the contract of sale and the notes, insists that no other payments were made. Ragland insists that a seventh payment was made to an agent of the Credit Company to whom other payments had been made and which had been remitted by the agent to his principal.

The last payment which the Credit Company admits receiving was made by a check, which was first dishonored by the bank upon which it was drawn, but was later redeposited for collection and was paid upon its second presentation.

The car had been converted into a truck, and Ragland testified that this added to the actual and to the usable value thereof.

About the last of December, and before the payment due on the 2d of that month had been paid, a representative of the Credit Company went to Ragland's place of

business in Stuttgart to make collection of the payment then due. Ragland proposed to give a check, which the agent declined to receive, because of the trouble over the last check, and because it was then after banking hours. Ragland stated that he did not have the cash, but insisted that the check be taken and went into his office to draw the check. While Ragland was thus engaged the agent went to the car and removed the ignition key and departed with it before the check could be delivered. Ragland thereupon mailed the check to the Credit Company at Little Rock, and requested the return of the key. This check was deposited for collection, and was duly paid, but the key was not returned. The Credit Company admits receiving an additional payment on February 5, covering the note due January 2. The return of the key was demanded at the time this payment was made, but the key was not returned. Ragland testified that he made other demands for the return of the key, but it was not returned, and he finally stated that he would make no more payments until the key had been returned. Ragland sought to acquire a key to the car from various sources without success, and he was unable to operate the car without it until he finally "wired around the ignition," a method of operating the car which was suggested to him by the machinist and foreman of the Conrey Company garage. This proved unsatisfactory, and largely destroyed the usable value of the truck, as "it would cause the ignition points to short out and the motor backfired, and the pistons kicked through the block." This happened in the latter part of January, and the car was hauled to the Conrey Company's garage, where repairs were made costing slightly more than $75. Payments on the repairs were made in installments of $25 each, the first payment being made March 1, the second March 16, and the last March 19. The testimony shows this damage was occasioned by the removal of the key and the attempt to run the truck by "wiring around the motor." While the car was in the garage for repairs, a purchase-money note matured and was not paid. According to the credit company's contention, there were two of these

notes. The Credit Company advised the Conrey Company, as indorser, that notes were in default, and the latter advised the former that the truck was in its possession, and, pursuant to directions so to do, the Conrey Company drove the truck to Little Rock and delivered it to the Credit Company. It is not seriously questioned that the conversion was the joint act of the two corporations. The Credit Company sold the car for $215.

Thereupon suit was brought against both corporations for the alleged wrongful conversion of the truck, its value being alleged to be $500. Judgment was also prayed for the cost of the repairs and for the usable value of the car.

A number of motions were made which questioned the jurisdiction of the court. As suit had been brought for the value of the car at the time of its conversion, the court sustained a demurrer to so much of the complaint as prayed judgment for the cost of the repairs and the usable value of the truck, whereupon the motion to dismiss was renewed as to the Credit Company, it having been served with process in Little Rock, but that motion was overruled.

Although the court sustained a demurrer to the action for repairs and for usable value, it permitted proof thereof to be made, as it was shown that both the repairs and the usable value of the car exceeded the two notes which the Credit Company claimed were due and unpaid at the time of the conversion of the truck. The theory upon which this testimony was admitted was that it tended to show that the Credit Company had no right to declare a forfeiture of the contract of sale, because, at the time it did so by converting the truck, damages had been sustained by Ragland which exceeded the notes then due, even though neither of them had been paid, that is, that the damages which had been sustained were greater than the notes claimed to be due.

It is true, of course, that the Credit Company, as the assignee of the sales contract, had the right to demand that the payments be made promptly as agreed, and to repossess the car in case of default. But it is true also

that none of the payments were made when due—they were all made out of time—yet they were all accepted when made. Even the payment which was made by the check which Ragland was engaged in drawing when the ignition key was removed was accepted.

Having extended indulgences, which it was not required to do, by accepting the delayed payments, the Credit Company should, before taking possession of the truck, have advised Ragland that the practice would no longer be continued. *General Motors Acceptance Corpo- ration* v. *Hicks, ante* p. 62. Indeed, Ragland was attempt- ing in good faith to pay the only note then due when the truck was put out of commission by the removal of the ignition key, and that payment was actually received, as was also another payment, before the conversion oc- curred, and subsequent payments were not made only because of the continued refusal of the Credit Company to return the key. There appears to be no question—at least the jury was warranted in so finding—that the Credit Company took the key for the purpose of prevent- ing appellee having the use of the car. We conclude therefore that the jury was warranted in finding that the conversion was wrongful, and, as it was the joint act of both defendants, Ragland had the right to bring suit against both defendants in any county where either was domiciled and could be served. The suit was brought in the county in which the Conrey Company was domiciled, and the service was therefore valid on the Credit Com- pany in another county. Section 1176, Crawford & Moses' Digest.

The case of *Ames Iron Works* v. *Reu,* 56 Ark. 426, 19 S. W. 1063, affords authority for the holding of the trial court that the damages for the repairs to the truck could be considered in determining whether anything was due the Credit Company at the time of the conversion. In the case cited a suit in replevin was brought to recover a cotton gin which had been sold under a reservation of title. The vendor had failed to deliver the property at the time and in the manner required by the contract of sale, and the vendee set up the damages thus occasioned

as a counterclaim against the debt for the purchase money. It was there held that the purchaser had the right to recoup these damages and hold the property upon paying the balance of purchase money, less the damages.

So here, if, as the jury has found, the Credit Company was responsible for damages exceeding the debt then due, the right did not exist to retake the truck without allowing credit for the damages, and the conversion was therefore wrongful. When the additional wrong of conversion was added, the purchaser then had the right to sue for the value of the truck, less the purchase money due thereon.

Upon this issue the court, at the request of the defendants, charged the jury as follows: "You are instructed that, if you find that plaintiff is entitled to recover in this case, then the measure of his damage would be the market value of the automobile taken at the time it was taken, less the balance he is indebted to the defendant on the purchase price of the same, plus interest at six per cent. per annum on the difference of net balance from the time it was taken."

The verdict of the jury for the sum of $223.45 was responsive to this instruction, and is fully sustained by the testimony. The judgment pronounced on this verdict appears to be correct, and it is therefore affirmed.