MERCEDES-BENZ CREDIT CORPORATION *v.* Jerry
MORGAN

92-982                                    850 S.W.2d 297

Supreme Court of Arkansas
Opinion delivered March 1, 1993
[Supplemental Opinion Denial of Rehearing April 5, 1993.*]

*Brown, J., not participating.

*Arnold, Grobmyer & Haley*, by: *Robert R. Ross*, for appellant.

*Dodds, Kidd, Ryan & Moore*, by: *Robert T. James*, for appellee.

TOM GLAZE, Justice. This tort of conversion case was commenced by Dr. Jerry Morgan after his 1984 Porsche had been repossessed by Mercedes-Benz Credit Corporation (MBCC). Morgan purchased the Porsche from Riverside Motors and afterwards, Riverside assigned the purchase installment contract to MBCC. Under the contract, Morgan was to make a payment of $253.37 on the first day of each month for forty-eight months commencing March 1, 1990. Morgan was indisputably late in his payments, and on March 22, 1991, MBCC decided to exercise its right under statutory law and the parties' contract to self-help repossession. MBCC peacefully and without incident gained possession of the Porsche on April 8, 1991. Following repossession, Dr. Morgan brought his account current. MBCC then offered to return the Porsche to Morgan, but he refused, choosing instead to file this conversion action against MBCC.

Prior to trial, MBCC moved for summary judgment which the trial court denied. The parties tried the case to a jury which returned a verdict for Dr. Morgan in the sum of $11,900.00. MBCC filed motions for directed verdict and for judgment notwithstanding the verdict, all of which were denied. The trial court also awarded attorney's fees to Morgan. MBCC brings this appeal arguing the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict and in awarding Morgan attorney's fees.

Morgan proceeded below on two theories, namely (1) he was not in default when MBCC decided to repossess Morgan's car, and alternatively (2) if Morgan was in default, MBCC had established a course of dealing by accepting late payments, so MBCC was required to put Morgan on notice that it would no longer allow late payments and would require strict compliance with the parties' contract. Both of these theories were presented

to the jury, and if Morgan is correct on either argument, we must affirm.

As to Morgan's first point, our review of the record shows he was clearly in default at the time MBCC repossessed Morgan's car. Morgan makes much of the argument that MBCC had miscalculated the receipt of his late February 1 and March 1, 1991 payments. He showed MBCC had misapplied his February 1 payment to the wrong account and mistakenly delayed in crediting this payment to Morgan's correct account until April 15, 1991. Morgan argued MBCC had actually accepted his late February 1 payment well in advance of its declaring Morgan in default. Morgan also claimed that MBCC had accepted his late March 1 payment on April 1, 1991. In both cases, Morgan asserts his account was current prior to MBCC's repossession of Morgan's car on April 8, 1991.

Although the record appears to support Morgan's argument as to his February and March payments, the evidence also reflects he still was late on his payment due on April 1, 1991, which was not received by MBCC until on or about April 11, 1991 — several days after MBCC repossessed Morgan's car. In sum, we conclude MBCC is correct in its argument that Morgan was, indeed, in default when it regained possession of Morgan's car. That being so, MBCC argues it was not liable for conversion.

Accordingly, MBCC relies on the case of *Ford Motor Credit Co. v. Herring*, 267 Ark. 701, 589 S.W.2d 584 (1979), where the Herrings purchased two pickup trucks which were financed by Ford Motor Credit Company and the purchase contract allowed repossession of the trucks if the Herrings defaulted in their payments. That is what occurred. The Herrings subsequently sued Ford Motor Credit Company for conversion of the trucks and a jury awarded the Herrings a verdict. This court reversed the jury verdict and reiterated the right of the seller to repossess the vehicle upon default if it could be done without a breach of the peace. *See also* Ark. Code Ann. § 4-9-503 (1987). The court held that, because the Herrings were in default in their payments and their trucks had been peacefully repossessed, the Herrings had failed to present sufficient evidence to establish a fact question that the repossession of the trucks constituted a conversion.

Here, Morgan's argument that he was not delinquent in his

account at the time his car was repossessed is not supported by the evidence, and if that were the only issue, we would reverse, holding MBCC was within its rights as set out in *Herring.*

■ The *Herring* case, however, is not controlling here because it does not address Morgan's second theory or argument. In other words, while the *Herring* case correctly upheld a seller's or secured creditor's right to repossess collateral when a debtor is in default, the *Herring* court was not confronted with the argument Morgan makes here — where the secured creditor (MBCC) routinely accepts a debtor's (Dr. Morgan's) delinquent payments, does the creditor waive strict compliance with the parties' contractual payment and enforcement provisions, at least until the creditor notifies the debtor that strict compliance will be expected henceforth?

Morgan's theory argued below and on appeal is well-grounded in legal authority. In pre-code cases, this court adhered to the principle that acceptance of late payments waives strict compliance with contract terms specifying time of payments. *See Commercial Credit Co.* v. *Ragland,* 189 Ark. 349, 72 S.W.2d 226 (1934); *General Motors Acceptance* v. *Hicks,* 189 Ark. 62, 70 S.W.2d 509 (1934); *see also Ford Motor Credit Co.* v. *Waters,* 273 So.2d 96 (Fla. Dist. Ct. App. 1973), (where seller of automobile had consistently accepted late payments from the buyer, who had made more than half of the thirty-six monthly payments when the vehicle was repossessed at time buyer was two months behind, the court held the seller's conduct led buyer to believe late payments would be accepted and therefore buyer had a right to be notified, prior to repossession, of any modification of such conduct, and in absence of such notice, buyer was entitled to recover for wrongful repossession.)

Professor Steve H. Nickles thoroughly discussed in his article, Rethinking Some U.C.C. Article 9 Problems, the foregoing principle concerning the effect of a creditor's acceptance of late payments as follows:

> A similar case involves a secured party who has regularly accepted late payments but eventually decides to repossess when the debtor fails to make the next payment on time. *A clause in the security agreement usually gives the creditor the right to declare the contract in default if*

*any payment is delinquent.* When sued by the debtor, the secured party argues that this contract language entitled him to repossess despite the established pattern of accepting late payments and foregoing repossession. The courts typically hold that "an established course of dealing under which the debtor . . . makes continual late payments and the secured party . . . accepts them does not result in a waiver of the secured party's right to rely upon such a clause in the agreement authorizing him to declare a default and repossess the chattel." *But "a secured party who has not insisted upon strict compliance in the past . . . must, before he may validly rely upon such a clause to declare a default and effect repossession, give notice to the debtor . . . that strict compliance with the terms of the contract will be demanded henceforth if repossession is to be avoided.* By his course of dealing the secured party has, in effect, waived the right to repossession based on defaults in making timely payments. The secured party must then reinstate the right by giving the debtor notice that strict compliance with the contract is now expected before a late payment can justify repossession. In many of these cases such notice has not been given, and the secured party is found liable for wrongful repossession.

34 Ark. Law Rev. 1, 137 (1980-81) (emphasis added).

In the present case, Dr. Morgan made only one timely payment of the fourteen monthly payments required prior to MBCC having repossessed Morgan's automobile. The thirteen late payments ranged from a few days to more than thirty days delinquent from the due date required under the parties' agreement. MBCC's personnel had contacted Morgan concerning his delinquent payments, but no one at MBCC ever informed Morgan that MBCC intended to commence strict enforcement of its rights under their contract. The record shows that shortly before it repossessed Morgan's Porsche on April 8, 1991, MBCC had again accepted another late payment (March) on April 1, 1991, and it also accepted Morgan's delinquent April payment on April 11, 1991. In fact, MBCC even tendered the car's return to Morgan when Morgan became current on his account. Clearly, a jury, under the above authority, could have found that (1) MBCC, by its course of dealing, had waived its right to reposses-

sion based on its having repeatedly accepted late payments, and (2) in order to reinstate its right under the parties' contract, MBCC was required to give Morgan notice that MBCC expected strict compliance in future dealings. If MBCC failed to give such notice in these circumstances, it would then not have the right to declare a default and repossess its collateral.

■■ At this point, we note that the secured party's liability for wrongful repossession is usually based on the common law rule of conversion. *See Nickles*, 34 Ark. L. Rev. at p. 139. The *Hicks* case previously cited was such a repossession case where this court upheld a buyer-debtor's claim that the creditor committed conversion when the creditor wrongly took possession of her refrigerator. Conversion is the exercise of dominion over the property in violation of the rights of the owner or person entitled to possession. *Herring*, 267 Ark. 701, 589 S.W.2d 584. As discussed above, MBCC failed to reinstate its right under the parties' contract to declare default and to repossess its collateral for late payments. As a consequence, its repossession of and exercise of dominion over Morgan's automobile in these circumstances sufficiently supported the jury's finding of conversion.

Before leaving this point, we acknowledge MBCC's reliance on *Westlund* v. *Nelson*, 7 Ark. App. 268, 647 S.W.2d 488 (1983). MBCC argues that *Westlund* stands for the proposition that acceptance of a late payment precludes acceleration because of the lateness of that payment, but is not a waiver of the right to accelerate when default occurs in a subsequent installment. *See Rawhide Farms* v. *Darby*, 267 Ark. 776, 589 S.W.2d 210 (Ark. App. 1979). Thus, MBCC concludes that, while it may have accepted thirteen late payments from Morgan, Morgan was still delinquent in his last April 1 payment, and under the *Westlund* rationale, MBCC could declare default and enforce its rights under the parties' contract by repossessing Morgan's car.

First, we note that MBCC never argued *Westlund* below either in support of its directed verdicts or its motion for judgment notwithstanding the verdict. MBCC relied simply on the fact that Morgan was in default, and under the holding in *Herring*, it had the right to repossess Morgan's car. On the other hand, Morgan, as discussed above, argued, when opposing MBCC's directed verdict motions and during his closing argument, that by ac-

cepting late payments, MBCC had established a course of dealing which required MBCC to notify Morgan that it expected future payment to comply with the parties' contract. Morgan, without objection, argued this theory to the jury and emphasized that MBCC never gave Morgan such notice and therefore it had no right to repossess Morgan's car when it did.[1]

In sum, MBCC simply failed to object or attack the legal soundness of Morgan's course of dealing argument below, nor did it argue that the principle in *Westlund* should control over Morgan's theory. Neither the trial court nor the jury was apprised of the legal argument MBCC now advances for the first time on appeal.[2] Because substantial evidence was presented that Morgan never received notice from MBCC that it would henceforth require prompt payments under the parties' contract, the jury could have readily determined MBCC wrongfully repossessed Morgan's vehicle when it did. This is especially true since MBCC continued its pattern of accepting late payments from Morgan by accepting his late April 1 payment on April 11, 1991, and offering to return Morgan his car. We note further that it was MBCC's burden to demonstrate error and having failed to do so, we must affirm. *Jenkins v. Goldsby*, 307 Ark. 558, 822 S.W.2d 843 (1992).

In its second point for reversal, MBCC contends the trial court erred in granting $2,500 in attorney's fees to Dr. Morgan pursuant to Ark. Code Ann. § 16-22-308 (1987). MBCC is right. Section 16-22-308 provides for a reasonable attorney's fee in certain civil actions, including breach of contract relating to the purchase or sale of goods, wares or merchandise. Tort actions are not included. *See Stein v. Lukas*, 308 Ark. 74, 823 S.W.2d

---

[1] No actual instruction was given on this theory even though Morgan argued this theory both to the trial court and the jury. Nor was an instruction tendered involving waiver or the principle in the *Westlund* case.

[2] We further acknowledge the existence of a "non-waiver/no oral modification" cause in the Retail Installment Contract. However, MBCC failed to present any argument as to that clause's effect upon the parties' course of dealing. Mindful of a split of authority, *See Tillquist v. Ford Motor Credit Co.* 714 F.Supp. 607 (D.Conn.1989); Barkley Clark, The Law of Secured Transactions Under the Uniform Commercial Code, ¶ 4.01[3] (2d.ed. 1988); Ronald Anderson, Uniform Commercial Code, § 9-503:14 (3d.ed. 1985 & Supp. 1991), we refrain from deciding this issue until it is properly raised and argued in an appropriate case.

832 (1992). Here, Morgan's claim was based on the tort of conversion, not contract. Therefore, his request for attorney's fees should have been denied.

For the reasons above, we affirm the jury verdict entered in Morgan's behalf, but reverse and remand the trial court's award of attorney's fees.

BROWN, J., not participating.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

### APRIL 5, 1993

*Robert R. Ross*, for appellant.

*Robert T. James*, for appellee.

PER CURIAM. MBCC petitions for rehearing asserting this court erred in stating MBCC never argued *Westlund* v. *Nelson*, 7 Ark. App. 268, 647 S.W.2d 488 (1983), below either in support of its directed verdict motions or its motion of judgment notwithstanding the verdict. It submits a motion to supplement the record requesting us to include a trial brief filed below which recites the *Westlund* case in support of MBCC's motion of judgment NOV. MBCC says it also orally mentioned *Westlund* to the trial judge in connection with its motion for summary judgment. MBCC

concedes that these two references to the *Westlund* holding were never abstracted, but it asserts those references became relevant only when this court *sua sponte* observed that the *Westlund* argument was not made below. Of course, we observed this issue only because MBCC mentioned the *Westlund* holding in its reply brief on appeal, and upon examining the abstract, we were unable to locate where the *Westlund* principle had ever been mentioned below. We note, too, that there was no hint of such an argument having been made below especially since the record reflects MBCC made no effort to submit this particular legal theory to the jury.

██ MBCC had the burden to bring up a sufficient record to demonstrate that the trial court was in error. *SD Leasing, Inc. v. RWF Corp.*, 278 Ark. 530, 647 S.W.2d 447 (1983). In addition, this court had held that it is precluded from considering an argument on its merits where the party failed to abstract the portion supporting its argument. *Kratzke v. Nestle-Beich, Inc.*, 307 Ark. 158, 817 S.W.2d 889 (1991). MBCC simply failed to meet these requirements as to the issue involving the holding in *Westlund* and whether that holding was controlling over the theories advanced by Dr. Morgan.

For the above reasons, we deny MBCC's petition for rehearing.

BROWN, J., not participating.