2011 Ark. App. 454

**Marty KILMAN, Appellant**

v.

**Catherine L. KENNARD, Appellee.**

**No. CA 10–1242.**

Court of Appeals of Arkansas.

June 22, 2011.

Andrea Witcher Brock, Forrest City, for appellant.

RAYMOND R. ABRAMSON, Judge.

This one-brief appeal stems from the acrimonious relationship between appellant Marty Kilman and appellee Catherine Kennard, the parents of a daughter, E.K., born May 22, 2004. The Cleburne County Circuit Court held Kilman in contempt of court and sentenced him to 180 days in jail, with all but thirty days suspended. Kennard was also held in contempt and sentenced to forty-five days, with all but five days suspended. Kilman argues five points for reversal. Finding no error, we affirm the circuit court.

*Background*

The parties were never married, and a complaint to establish paternity was filed in November 2004. There were several continuances and genetic testing indicating a 99.99% probability that Kilman was E.K.'s father. A judgment of paternity finding that Kilman was E.K.'s father was entered on February 14, 2006. Agreed orders were later entered awarding Kilman visitation pursuant to the court's standard schedule and setting child support through a trust funded by a personal-injury judgment awarded to Kilman.

Prior to the contempt citations at issue in this appeal, Kennard had filed two earlier petitions seeking to hold Kilman in contempt. In both instances, agreed orders were entered resolving the petitions. An April 16, 2007 agreed order found Kilman in contempt for failing to return E.K. after a visit. He was sentenced to thirty days in jail, but the sentence was suspended.

A February 14, 2008 agreed order resolved the second petition and is at the heart of this appeal. Kilman agreed to a finding that he was in contempt of court and received a suspended sentence of forty-five days. He was also to engage the services of a psychiatrist for at least one year of monthly sessions, and a psychologist for at least one year of weekly sessions. Kilman also agreed to have his visitation supervised by his mother, Carol Carter, for at least one year. The parties also agreed that all communications except for emergencies about E.K. would be made through Carter.[1] Kilman would also pay an attorney's fee of $1,000 to Kennard's attorney.

Kennard filed another contempt petition on May 7, 2009, alleging violations of the February 14, 2008 agreed order. A hearing on the petition was held on January 7, 2010, but neither Kilman nor his attorney appeared. They later denied having notice of the hearing. The court found Kilman in contempt, ordered him incarcerated for 100 days, and suspended his visitation.

---

1. Kilman would still be entitled to two weekly telephone calls with E.K.

Within forty-five days of his release, Kilman was to complete the tasks set forth in the earlier orders. Kennard was awarded a judgment for restitution of $126, a $1,500 attorney fee, and $185 in costs, to be paid within thirty days. The court also ordered that Kilman submit to a drug test. The court's order was entered on January 13, 2010.

Kilman filed a petition on January 11, 2010, seeking a change of custody and asking the court to hold Kennard in contempt. Among the many allegations were that Kennard had failed to keep him informed as to E.K.'s activities and condition; that she had interfered with his visitation and attempted to alienate the child from him; that she had failed to complete potty training for the child; that she had failed to provide stable housing for the child; and that she failed to provide proper care for the child. Kennard denied the material allegations of the petition.

On January 19, 2010, Kilman filed a motion seeking to set aside the January 13, 2010 contempt order on the basis that he and his attorney had no notice that the matter would be heard on January 7, 2010.

### Proceedings at Trial

A hearing was held on July 14, 2010. Marty Kilman testified that he was present when the agreement was read into the court record but had no recollection of the agreement that resulted in the February 2008 order. Although he said that he did not recall that he was required to seek psychiatric and psychological treatment, he admitted that he did not seek such services as ordered. Kilman said that, since learning of the order, he unsuccessfully tried to schedule appointments with a psychologist. According to Kilman, his prior attorneys made agreements without his knowledge or consent. He claimed that he was unaware that all communication between the parties was banned, but

knew that communications relating to visitation had to go through his mother.

On cross-examination, Kilman asserted that on the day Kennard said he did not return E.K., he obtained Kennard's permission to delay the return because E.K. was running a fever and had diarrhea. He said he returned E.K. the next day at the regular time. Kilman also contended that he was denied all visitation with E.K. from July 4, 2009, until February 1, 2010, as well as access to her medical and school records.

Catherine Kennard testified that she wanted the court to incarcerate Kilman for his contempt, but did not want her child to go to foster care. She asserted that she had done her best to comply with the court's orders by allowing Kilman to have visitation. Although she knew that Kilman's visitation was supervised for one year, she nevertheless allowed unsupervised visitation by late spring or early summer of 2008 because she did not believe that E.K. would be in danger. Kennard said that Kilman had proposed summer visitation but she put him off. Kilman did not receive summer visitation in 2008, and Kennard said she denied that visitation. She also said that Kilman received some summer visitation in 2009, but never his entire summer visitation.

Kennard recounted the events surrounding Kilman's April 2009 visit when she contended that Kilman failed to return the child and denied giving Kilman permission to keep E.K. an extra day. She admitted that she denied Kilman his visitation for several weeks after that incident. Kennard denied Kilman visitation on the advice of her attorney during January 2010 because that was just before a court date.

Following a recess, the court asked Kilman if he would test positive for any legal substances for which he did not have a

prescription. Kilman answered in the negative. The court also twice asked if Kilman would test positive for illegal substances and twice Kilman responded, "[N]ot that I am aware of." After confirming Kilman's testimony that he was not under a doctor's care or taking any medicine, the court ordered Kilman to submit to a drug test.

After closing arguments, the circuit court repeated its order that Kilman submit to a drug test. The court again asked Kilman if he was certain that he would not test positive for any substance. Kilman said that he would not know until the test were performed. The court admonished Kilman to tell the truth, saying it would be "catastrophic" for Kilman if he did not. Kilman said there was nothing else he wanted to tell the court.

The court found Kilman in contempt. After recounting the two previous agreed orders, the court said that the transcript of the January 2008 hearing showed that Kilman was present in court, represented by an attorney; that he heard the agreement that was read into the record; that it was what he had agreed to; and that he would follow that agreement. The court then discussed the provisions relating to psychiatric and psychological treatment and found that the provisions directly related to Kilman's visitation. The court found Kilman "owed" seventy-five days, which the court included in its sentence of 180 days. All but thirty days of the sentence were suspended. If Kilman's drug test was positive, he would be required to serve ninety days in jail. After Kilman's release, he would have five days to come into compliance with its previous orders. If he did not comply, he would have to serve 180

days. The court ordered standard visitation upon Kilman's release.

The court found that Kennard was in contempt for violation of the court's order concerning visitation and sentenced him to forty-five days' incarceration, with all but five days suspended contingent upon future compliance with the court's orders. Kennard was allowed twenty days in which to complete her sentence by serving nonconsecutive days and weekends.

The court admonished the parties that it would not tolerate noncompliance and that any party found to have violated the court's orders would serve the portion of their sentence that was suspended. The court also noted that both parties would probably be sentenced to 180 days for future contempt. The court denied Kennard's request for attorney's fees.

The circuit court entered a commitment order on July 15, 2010, reserving the remaining issues for a later order. Kilman filed a timely notice of appeal from the commitment order. The court granted Kilman a stay pending appeal upon the posting of a supersedeas bond in the amount of $2,500.

The court issued an order addressing the remaining contempt issues on October 4, 2010, that repeated the earlier findings of contempt and sentences.[2] Kilman filed a supplemental notice of appeal from the contempt order.

### Contempt Generally

In order to establish contempt, there must be willful disobedience of a valid order of a court. *See Ivy v. Keith,* 351 Ark. 269, 92 S.W.3d 671 (2002). Contempt is a matter between the court and the litigant, and not between the two op-

---

2. The court did not address Kilman's request for a change of custody. However, that does not affect our jurisdiction because an order of contempt is a final, appealable order. *See*

Ark. R.App. P.-Civ. 2(a)(13); *Holifield v. Mullenax Financial & Tax Advisory Group, Inc.,* 2009 Ark. App. 280, 307 S.W.3d 608.

posing litigants. *Id.* Before one can be held in contempt for violating the court's order, the order must be definite in its terms, clear as to what duties it imposes, and express in its commands. *Id.*

 Contempt is divided into criminal contempt and civil contempt. *Omni Holding & Dev. Corp. v. 3D.S.A., Inc.,* 356 Ark. 440, 156 S.W.3d 228 (2004). Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders. *Id.* Civil contempt protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. *Id.* The line between civil and criminal contempt may blur at times. *Id.* In *Baggett v. State,* 15 Ark. App. 113, 116, 690 S.W.2d 362, 364 (1985), we gave a concise description of the two concepts, noting that criminal contempt punishes while civil contempt coerces. *See also Applegate v. Applegate,* 101 Ark. App. 289, 275 ⌊8S.W.3d 682 (2008). Therefore, the focus is on the character of relief rather than the nature of the proceeding. *Fitzhugh v. State,* 296 Ark. 137, 752 S.W.2d 275 (1988). The nature of the proceedings determines our standard of review.

## Standard of Review

 In the present case, the sentences imposed on Kilman and Kennard were punitive in nature and neither party had the opportunity to purge the contempt. Therefore, we conclude that the court *found the parties in criminal contempt.* Our standard of review for criminal contempt is whether the decision is supported by substantial evidence, viewing the record in the light most favorable to the circuit court's decision. *See, e.g., Bartley v. State,* 73 Ark. App. 452, 45 S.W.3d 387 (2001).

## Arguments on Appeal

Kilman's first point is that the circuit court erred by including the previously-imposed suspended sentences with the sentence for the present contempt. We agree that the circuit court erred in doing so; however, reversal is not warranted under the facts of this case.

 A circuit court cannot indefinitely suspend a contempt sentence, but could conditionally postpone a sentence for a specific period of time. *Henry v. Eberhard,* 309 Ark. 336, 342, 832 S.W.2d 467, 470 (1992). However, the court did not do so in the present case. This means that the suspension of the jail sentences contained in the April 2007 and February 2008 agreed orders had expired and, therefore, the circuit court could not impose those sentences in the present case. *Donovan v. State,* 95 Ark. App. 378, 237 S.W.3d 484 (2006). ⌊9Kilman, however, was not prejudiced by the error. First, although the circuit court included the seventy-five days it had previously sentenced Kilman to serve in its total sentence of 180 days, it suspended all but thirty days of that sentence. This amounted to a complete remission of 150 days of the sentence. *Henry, supra; Donovan, supra.* Second, the court was permitted to consider Kilman's prior violations in determining a sentence for violations of the February 2008 order and could have simply imposed the 180–day sentence without incorporating the previously imposed suspended sentences.

 Comparing the sentence he received to sentences in other cases[3] where one parent failed to return a child, Kilman next argues that his 180–day sentence was excessive. He focuses on the sentence's entire length, including the

**3.** *Korolko v. Korolko,* 33 Ark. App. 194, 803 S.W.2d 948 (1991); *Smith v. Smith,* 28 Ark. App. 56, 770 S.W.2d 205 (1989); *Payne v.*

*White,* 1 Ark. App. 271, 614 S.W.2d 684 (1981).

amount suspended. Although it is within our authority to modify punishment imposed for contempt in a proper case, *see Carle v. Burnett*, 311 Ark. 477, 845 S.W.2d 7 (1993), we cannot say that a reduction of punishment is warranted in the case at bar. As noted above, the suspension of the sentence amounts to a complete remission of the portion of the sentence suspended. Kilman's conduct has been repetitive; this is the third or fourth contempt citation in three years. The circuit court, which noted that Kilman's credibility was severely lacking, was in a better position than we are to determine whether there would be a recurrence, and we decline to modify the punishment imposed.

We do not consider Kilman's argument that the circuit court could not increase the amount of time he would be required to serve if he tested positive for drugs because there has been no showing that Kilman tested positive for drugs after the July 2010 hearing, thereby subjecting him to the increased punishment. This court does not give advisory opinions. *See Scott v. McCuen*, 289 Ark. 41, 709 S.W.2d 77 (1986). Moreover, Kilman had the burden to bring up a sufficient record to demonstrate that the circuit court was in error. *Mercedes–Benz Credit Corp. v. Morgan*, 312 Ark. 225, 850 S.W.2d 297 (1993). The test results should have been available long before the circuit court entered its supplemental order in October 2010.

In his fourth point, Kilman argues that the circuit court erred in finding that he was in contempt for violating the requirement in the February 2008 order to seek psychiatric and psychological treatment because the February 2008 order suspended his incarceration "on the condition that there be no material violations of the visitation orders in the future," and that the treatment provisions were not directly related to visitation. We disagree.

Where a person is held in contempt for failure or refusal to abide by a judge's order, the reviewing court will not look behind the order to determine whether it is valid. *Stilley v. University of Ark. at Ft. Smith*, 374 Ark. 248, 287 S.W.3d 544 (2008); *Johnson v. Johnson*, 343 Ark. 186, 33 S.W.3d 492 (2000). The fact that an order may be erroneous does not excuse disobedience on the part of those who are bound by its terms until the order is reversed. *Stilley, supra.* The circuit court found that the provisions relating to psychiatric and psychological treatment were related to visitation in that Kilman would not otherwise have been required to seek that treatment. Moreover, Kilman *agreed* to the treatment provisions. He also admitted that he had not complied with those requirements. He cannot now change his position and argue that the provisions do not relate to his visitation.

Finally, Kilman argues that the circuit court's sanctions against Kennard for denying visitation were inadequate. He contends that the circuit court should have imposed the forty-five-day sentence that the court admonished the parties about at the time of the February 2008 order. Kennard admitted that she had denied Kilman his visitation and the court *did* sentence Kennard to forty-five days, but suspended all but five days of the sentence. Kennard had not previously been held in contempt of court whereas Kilman had previously been held in contempt on more than one occasion. As noted above, the circuit court is in a better position to determine whether there will be a recurrence by Kennard.

Affirmed.

ROBBINS and GRUBER, JJ., agree.