

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CV–16–330

| | | |
|---|---|---|
| JAMES BRANCH | | **Opinion Delivered:** December 14, 2016 |
| | APPELLANT | |
| | | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT |
| V. | | [NO. 63DR-14-71] |
| | | |
| | | HONORABLE BOBBY D. MCCALLISTER, JUDGE |
| STEPHANIE BRANCH | | |
| | APPELLEE | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

## PHILLIP T. WHITEAKER, Judge

This appeal arises out of divorce proceedings following the eleven-year marriage of Stephanie Quinn (Quinn) Branch and James (Jimmy) Branch.[1] On appeal, we are charged with determining whether the circuit court erred by (1) finding that the parties' premarital agreement was unenforceable pursuant to the Arkansas Premarital Agreement Act; (2) finding that Jimmy breached the premarital agreement rendering it unenforceable; and (3) equally dividing the equity in a house acquired during the parties' marriage. We affirm in part and reverse and remand in part.

## I.     *Background*

Quinn and Jimmy were married in July 2003. Prior to the marriage, the parties executed a premarital agreement. In January 2014, Quinn filed a complaint for divorce. In

---

[1]This case returns to our court after a previous dismissal without prejudice. *See Branch v. Branch*, 2015 Ark. App. 712, 479 S.W.3d 566.

her complaint, Quinn sought to have the premarital agreement declared void pursuant to Arkansas Code Annotated section 9-11-406(a)(2) (Repl. 2015). Jimmy filed an answer to Quinn's complaint, denying that the premarital agreement was void; he also counterclaimed for divorce.

The circuit court held a final divorce hearing in September 2014. In October 2014, the circuit court issued a letter opinion, and later in November 2014, a decree of divorce was entered, memorializing the circuit court's decision. Thereafter, Jimmy appealed to this court. This court dismissed that appeal without prejudice because of a deficient Rule 54(b) certificate. *See Branch*, *supra*. Following this court's dismissal, the case returned to the Saline County Circuit Court wherein the court issued an amended divorce decree that included a Rule 54(b) certificate complying with our rules. Jimmy timely appealed from the amended decree.

On appeal, Jimmy raises three general arguments in support of reversal. He contends that (1) the circuit court improperly invalidated the parties' premarital agreement pursuant to Arkansas Code Annotated section 9-11-406(a)(2); (2) the circuit court erred in finding that he breached the premarital agreement rendering it unenforceable; and (3) the circuit court improperly distributed his premarital property, specifically, the house acquired during the marriage that was solely in his name.

## II.          *Standard of Review*

Our standard of review is well settled. We try domestic relations cases de novo on appeal, and will not reverse a circuit court's findings unless they are clearly erroneous. *Taylor v. Taylor*, 345 Ark. 300, 47 S.W.3d 222 (2001). A finding is clearly erroneous when,

although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Norman v. Norman*, 342 Ark. 493, 30 S.W.3d 83 (2000).

        III.      *Whether the Circuit Court Improperly Invalidated the Parties' Agreement*

Quinn and Jimmy's premarital agreement is governed by the Arkansas Premarital Agreement Act. *See* Ark. Code Ann. § 9-11-401 *et seq.* The Arkansas Premarital Agreement Act places the burden on the party contesting the agreement to prove its invalidity. Ark. Code Ann. § 9-11-406(a). Here, Quinn bore that burden. Under the Arkansas Premarital Agreement Act, Quinn could invalidate the agreement by proving that it was not executed voluntarily. Ark. Code Ann. § 9-11-406(a)(1). This provision is not applicable to this appeal because Quinn does not contest the voluntariness of the execution.

Quinn sought to invalidate the premarital agreement pursuant to the second statutory provision, Arkansas Code Annotated section 9-11-406(a)(2). Arkansas Code Annotated section 9-11-406(a)(2) provides that

"[a] premarital agreement is not enforceable if the party against whom enforcement is sought proves that:

(1) that party did not execute the agreement voluntarily; or

(2) the agreement was unconscionable when it was executed and, before the execution of the agreement, that party:

      (i)      was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;

      (ii)      did not voluntarily and expressly waive after consulting with legal counsel, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and

SLIP OPINION

       (iii)    did not have, or reasonably could not have had, an adequate knowledge of the property of financial obligations of the other party.

To prevail under this provision, it was Quinn's burden to establish four things:  (1) that the agreement is unconscionable; (2) that, prior to the execution of the premarital agreement, she was not provided a fair and reasonable disclosure of the property or financial obligations of Jimmy; (3) that, prior to the execution of the premarital agreement, she did not voluntarily and expressly waive, after consulting with legal counsel, in writing, any right to disclosure of Jimmy's property or financial obligations beyond the disclosures provided; and (4) that, prior to the execution of the premarital agreement, she did not have, or reasonably could not have had, an adequate knowledge of Jimmy's property or financial obligations.  Ark. Code Ann. § 9–11–406(a)(2).  The circuit court found that Quinn proved each of these four elements and declared the parties' premarital agreement unenforceable.

Jimmy contends that the court erred in finding the agreement unenforceable because the court failed to consider all statutory requirements of Arkansas Code Annotated section 9–11–406(a)(2).  Whether the court correctly applied and interpreted the Act is a question of law, which this court reviews de novo.  *Scudder v. Ramsey*, 2013 Ark. 113, 426 S.W.3d 427.  Jimmy also argues that the circuit court's invalidation of the premarital agreement should be reversed because Quinn failed to prove all of the four required elements of Arkansas Code Annotated section 9–11–406(a)(2).  Specifically, Jimmy argues that Quinn failed to prove that (1) the agreement was unconscionable; (2) she did not receive a fair and reasonable disclosure of Jimmy's property or financial obligations; and (3) she did not have, or reasonably could not have had, an adequate knowledge of Jimmy's property or financial

obligations. A conclusion that the circuit court erred in finding that any one of the requirements of Arkansas Code Annotated section 9-11-406(a)(2) was met requires reversal.

As a preliminary matter, Jimmy argues that the court failed to consider all statutory requirements of Arkansas Code Annotated section 9-11-406(a)(2). In support of his argument, Jimmy references the circuit court's letter opinion. Admittedly, the court mentioned only two of the four requirements of the Act—unconscionability and voluntary waiver—in the letter opinion. Nevertheless, the amended divorce decree provides that the circuit court considered all statutory requirements and found that Quinn proved each of them. Because the divorce decree provides that the circuit court considered all statutory requirements, we easily dispose of this argument, concluding that the circuit court did not err as a matter of law.

We now turn our attention to whether Quinn proved all four required elements of Arkansas Code Annotated section 9-11-406(a)(2). We begin our analysis by focusing on whether Quinn proved that she did not receive a fair and reasonable disclosure of Jimmy's assets.

At the final divorce hearing, Jimmy produced Exhibits A and B to the premarital agreement. Exhibit A provided that Jimmy had a net worth of approximately $1 million. Exhibit B listed many of Jimmy's items of personal and real property, as well as his various investment accounts; it did not, however, specifically identify the amount of money in each account. Quinn admitted that she had received these disclosures. The only evidence regarding Jimmy's disclosures to Quinn comes from Exhibits A and B to the parties'

premarital agreement. Quinn failed to offer any evidence tending to show that she did not receive a fair and reasonable disclosure.

In the divorce decree, the circuit court found that Jimmy had "wholly failed to disclose his assets" and that, generally, his testimony was "extremely wanting." Circuit courts are charged with making factual findings and assessing credibility. This court gives due deference to the circuit court's superior position to determine the credibility of witnesses and the weight to be given to their testimony. *Skokos v. Skokos*, 344 Ark. 420, 40 S.W.3d 768 (2001). Nevertheless, this court has the authority to reverse those findings when left with a firm conviction that the circuit court made a mistake. *Norman*, *supra*.

Irrespective of the circuit court's credibility determination, we conclude that it clearly erred. A fair and reasonable disclosure of assets is not necessarily a full and complete disclosure. A disclosure "need not be a full or exact disclosure, but rather may consist of an approximation of net worth." 3 A.L.R. 5th 394 § 5. Arkansas case law confirms this as our guide. This court has upheld a premarital agreement where a husband made a generalized disclosure of his assets but did not specify the precise sources and amounts of his income. *See Gooch v. Gooch*, 10 Ark. App. 432, 664 S.W.2d 900 (1984). Exhibits A and B constitute a fair and reasonable disclosure of Jimmy's assets. Because we conclude that the circuit court erred by finding that Quinn did not receive a fair and reasonable disclosure of Jimmy's assets, we need not consider the remaining statutory requirements. We reverse the circuit court's order declaring the parties' premarital agreement invalid and remand the issue to the circuit court for entry of an order consistent with this opinion.

IV.     *Whether Jimmy Materially Breached the Premarital Agreement*

The circuit court alternatively concluded that the parties' premarital agreement was unenforceable because Jimmy breached the agreement, and Jimmy contends that this ruling was also erroneous. The relevant provision in the premarital agreement reads as follows:

> The First Party agrees to contribute to and maintain a separate retirement account for Second Party. First Party will contribute to an IRA, savings, or investment account for each year of marriage. This amount will not exceed or be under $5,000 per year of marriage. This contribution will cease should the marriage fail. This contribution may cease should First Party become unemployed or retire; but only will cease if First Party's net worth falls below One Million Dollars. Second Party acknowledges that First Party's net worth is within ten percent (10%), plus or minus, of One Million Dollars at the present time.

The uncontroverted evidence is that Jimmy opened a retirement account for Quinn but that he did not contribute $5,000 annually during their marriage. Quinn presented evidence that had Jimmy contributed to the account annually, she would be entitled to $74,585.65. Jimmy agreed to pay that amount into the account if the premarital agreement was enforced.

Jimmy argues that the court erred in determining his failure to make annual contributions to the account constituted a breach of contract. We disagree. We conclude that this contractual provision required Jimmy to make annual $5,000 contributions to an account on Quinn's behalf. Jimmy's failure to make these annual contributions constituted a breach of the agreement.

Thus, we must consider whether Jimmy's breach was material. Where there is a material breach of contract, the injured party is entitled to rescission of the contract. *Economy Swimming Pool Co. v. Freeling*, 236 Ark. 888, 891, 370 S.W.2d 438, 440 (1963). A material breach is a failure to perform an essential term or condition that substantially defeats the purpose of the contract for the other party. *Spann v. Lovett & Co.*, 2012 Ark. App. 107,

SLIP OPINION

at 21, 389 S.W.3d 77, 93. An influential circumstance in determining whether a breach is material is the extent to which the injured party will obtain the substantial benefit that he reasonably anticipated. *Id.*

Jimmy argues that the purported breach cannot be material because it had no adverse effect on Quinn. We agree. Jimmy and Quinn stipulated to the amount of money he owed Quinn pursuant to this provision. Because this stipulation allows Quinn to receive the benefit that she anticipated, we hold that Jimmy's breach was not material and that rescission was an improper remedy. We reverse the circuit court's order rescinding the premarital agreement and remand the issue to the circuit court so that it may issue a decree consistent with this opinion.

## V.     *The Equal Division of the House*

Jimmy argues that the circuit court erred when it equally divided the equity in a house acquired during the marriage. The evidence on this issue is that in November 2011, Jimmy sold his premarital home and deposited $235,000 in a joint checking account with right of survivorship that he maintained with Quinn. Four days later, he removed that $235,000 and used it as a down payment on a $440,000 house that was purchased solely in his name. Jimmy argues that nearly all other remaining payments were traceable to proceeds of sales of his other nonmarital properties. Again, any funds received from the sale of Jimmy's nonmarital property were put into the parties' joint account and later withdrawn to pay down the debt on the house. This joint account is the primary account used during the marriage, and both parties placed funds into that account.

In the final decree, the circuit court ordered the house sold and the proceeds divided equally. Jimmy argues that this was error for two reasons: (1) the court disposed of a nonmarital asset without providing a basis for the ruling, and (2) he was entitled to more than half of the equity because he used nonmarital funds to pay down the debt on the house.

First, Jimmy argues that the house was his nonmarital property and that the circuit court erred when it did not provide its reasoning for the division of the house. Arkansas Code Annotated section 9-12-315(a)(2) requires a court to identify the basis for the division of nonmarital property. This argument is without merit. Arkansas Code Annotated section 9-12-315(b) defines marital property as "property acquired by either party during the marriage." The house was clearly acquired during the parties' marriage, and thus, it meets the definition of marital property. Therefore, we hold that the circuit court did not err by failing to identify a basis for its ruling.

Jimmy also contends that the circuit court erred when it equally divided the equity in the house. He insists that he should have been awarded the $235,000 he used as the down payment on the marital home and the payments he made toward the debt on the house that were traceable to the sales of his nonmarital property.

Our review is limited to whether the circuit court's decision that the funds were marital is clearly erroneous. We cannot say that it is. Jimmy emphasizes that, even though all payments on the house originated from a joint marital bank account, the funds used to pay down the debt on the house can be traced to his nonmarital property. Our supreme court has considered the issue of tracing funds and held that "the fact that one spouse made contributions to certain property does not necessarily require that those contributions be

recognized in the property division upon divorce. . . .We have no doubt that the tracing of funds . . . might be inconsequential when considered at the dissolution of a marriage that had lasted for many years and had left the parties with decidedly unequal means for supporting themselves in the future." *Canady v. Canady*, 290 Ark. 55, 721 S.W.2d 650 (1986). Here, the parties had been married for eleven years, and Quinn had not consistently worked during the marriage. Additionally, both parties contributed to the joint account that was utilized to pay down the debt on the mortgage. Accordingly, we conclude that the circuit court did not clearly err in its equal division of the house, and we affirm on this issue.

Affirmed in part; reversed and remanded in part.

GLOVER and BROWN, JJ., agree.

*Wagoner Law Firm, P.A.*, by: *Jack Wagoner III* and *Angela Mann*, for appellant.

*LaCerra, Dickson, Hoover & Rogers, PLLC*, by: *Traci LaCerra*, *Natalie Dickson*, and *Lauren Hoover*, for appellee.