
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–16–514

| | |
|---|---|
| ANGELA MOODY<br>APPELLANT<br><br>V.<br><br>EDWARD MOODY<br>APPELLEE | **Opinion Delivered:** November 1, 2017<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTEENTH DIVISION<br>[NO. 60DR-11-1586]<br><br>HONORABLE VANN SMITH, JUDGE<br><br>AFFIRMED IN PART; REVERSED IN PART |

## WAYMOND M. BROWN, Judge

Appellant appeals from the circuit court's February 25, 2016 order disposing of the parties' multiple contempt motions. On appeal, she argues that (1) appellee should be responsible for the real-estate taxes on the marital home he received in the property-settlement agreement, (2) the circuit court's flatware ruling was reversible error, (3) the circuit court erred in splitting the lion statues, (4) appellant is entitled to the full value of the Kubota tractor, (5) the circuit court erred in ruling on her contempt motion relating to appellee's parental neglect without taking testimony, and (6) the circuit court erred by denying her motion for contempt for appellee's "harassing and annoying filings." We affirm in part and reverse in part.

The parties were divorced pursuant to a divorce decree entered on January 8, 2015. It was stated in the decree that the parties reached a "settlement compromise of all property

rights and debt liabilities existing between them, which agreement the Court [found] to be fair, reasonable and equitable." The agreement was "incorporated [therein] by reference."

Appellee filed the first motion for contempt on March 20, 2015. He stated therein that the parties had met and divided the property by agreement and put the agreement in writing, but that a number of items of personal property were removed from the marital home when appellant vacated the premises. Of import to this appeal were two missing Railroad Baron side tables; appellee's mother's silver, which he inherited; appellee's half of the china; appellee's half of the silver-plated flatware; and two cast-stone lion statues, which had been in front of the marital home.

Appellant responded on March 26, 2015, denying all of appellee's allegations and filing a counter-petition for contempt. She sought a contempt citation against appellee for allowing their minor child, on March 17, 2015, to "sit unrestrained and unattended, on the rear of his convertible while [appellee] drove the vehicle in the St. Patrick's Day Parade in Little Rock, placing the child in danger and against the best interest in the child." She also alleged that during a spring break visitation in Nassau, Bahamas, "the child became lost after [appellee] placed the child, unattended, in a 'lazy river,' causing the water park staff to search nearly half an hour for the [appellee's] whereabouts before locating him, again placing the child in danger and against the best interest of the child."[1] She also sought a contempt citation based on appellee's refusal to surrender an "expensive oriental rug,"[2] which she

---

[1]Two other allegations were made that are not pertinent to this appeal.

[2]This court notes that while there were many rugs listed in the property-settlement agreement, some of which were described, none were described as an "oriental" rug; therefore, it is not clear which rug appellant is referencing.

valued at $3,800.00, and a Kubota tractor, which "had been in continual use since its purchase in 2011 as a lawn tractor" and which she stated was designated to go with her, though she stated that it was "not part of the property specifically identified by the Decree."

Appellee responded to appellant's counter-petition on April 8, 2015, averring that while the minor child was allowed to ride on his vehicle in the parade, it was "at a walking pace, [and the child] was properly supervised by her father and Little Rock Police, along with 60 to 70 other vehicle participants." He also averred that "the minor child was allowed to ride the 'lazy river' ride in the Bahamas in an inner tube in approximately 3 feet deep water and was properly supervised and in his view at all times, along with lifeguards[.]" Regarding the tractor, he asserted that "his farm, Moody Family Farm, LLC, purchased the Kubota tractor in May 2011 with funds from [appellee's] mother and [appellant] has no interest" as the parties agreed that Moody Family Farm, LLC is a non-marital asset. He asserted that appellant gave him the oriental rug. Where else pertinent, appellee denied the allegations in appellant's counterpetition for contempt.

Appellee filed an amended motion for contempt on November 16, 2015, asserting that contrary to the divorce decree and settlement agreement, appellant had failed to pay the real-property taxes as ordered. Appellant filed a motion for contempt on December 18, 2015, asserting that appellee "through his counsel, continue[d] to make unreasonable demands that serve no legitimate purpose and [were] done in an effort to drive up legal fees and to harass and annoy the [appellant,]" in violation of the circuit court's April 1, 2011

restraining order enjoining and restraining each party from "harassing the adverse party[.]"[3] Appellee responded on January 13, 2016, denying her allegation.[4]

A hearing on the outstanding motions was held on February 18, 2016. Adrienne Griffis, an attorney from appellee's counsel's firm, testified to accompanying appellee and his decorator to inventory the home in December 2014. She saw "pieces of silverware packed away in storage" in a closet. They opened the storage and looked at the silverware, which was Boulenger, using the "flashlight setting" from appellee's cell phone. She saw appellee attempt to take a picture of the silver flatware with his phone; he "said it didn't come out." No other pictures were taken, but she prepared an inventory that originated from appellant's list, onto which they added. She noted premarital property in the inventory based on the parties' assertions of the same.

Cindi Hall, the parties' interior designer, testified to assisting in inventorying the parties' property in December 2014. She saw the "silver pieces in the marital home" in a closet in the back hallway. She thought Griffis tried to take a picture, but she knew Griffis took the silverware out and got the name and pattern. It was in a container and looked like a twelve-piece setting. She found the two Railroad Baron side tables in the garage. Appellee received four place settings of the bone Lenox China, though he was supposed to receive

---

[3]Other allegations therein are not pertinent to this appeal.

[4]Appellee's response also included another motion for contempt; however, those allegations are not pertinent to this appeal. Additional responses and contempt motions were filed by both parties after the contempt motion; however, none of the allegations therein are pertinent to this appeal.

six. The two cast stone lion statues were in front of the house when they did the inventory, but were gone after appellant vacated the premises. She testified that there were "pictures of everything" except the Railroad Baron side tables. "Nowhere on the list" did it say that appellee was to get the lion statues.[5]

Appellee testified that the June 11, 2013 order made appellant responsible for the property taxes on the residence from January 13, 2013, until further ordered and that the decree made appellant responsible for utilities "and other expenses associated with the marital residence as previously ordered by this Court until she vacates the marital home." He understood that to include real-estate taxes. He was awarded "any outstanding indebtedness on the residence inclusive of taxes and insurance" and that is why he "specifically added" language to the decree that appellant "would be responsible for what she was due" under the previous temporary order.[6] He assumed he was responsible for any taxes due and owing "going forward" from when appellant vacated the home. He agreed to pay appellant $27,500 per month in child support while appellant was in the home, and the real-estate taxes were to be covered by appellant as part of that arrangement.

Appellee believed that the two Railroad Baron side tables found in the garage were smaller and not the same side tables that had been in the master bedroom, which he asserted had doors on the front to store things, unlike the two side tables found in the garage. He

---

[5]The lion statues were not on the list from which the property-settlement agreement was made.

[6]The decree expressly states that it was approved as to form and content by both parties.

pulled down some boxes out of a closet in the home and gave them to Griffis and Hall. The silverware was in there. He asserted that "it was obvious that it had been hidden because it was the only box that was there that had anything in it." Griffis and Hall counted the silver. He attempted to take a picture but it was too dark. They discussed the silver after appellant vacated the home; appellee could not find it. Appellant told him it was either in the secretary or the dresser in the living room; it was not in either piece of furniture. There was no more discussion about the silver. He had no receipts for the silver he alleged was purchased during the marriage; several were wedding gifts and "others [appellant] bought to complete the set."

Appellee said that appellant took pictures of everything for homeowner-insurance purposes. There were two cast stone lion statues on the front porch that were not mentioned on the inventory list because he "expected them to stay with the home"; "[a]nything that wasn't on the list was supposed to stay at the house." He admitted that the divorce decree "does not say anything not on the list is supposed to stay at the house"; he averred that it was an unwritten agreement between the parties.

Appellant testified that she had not paid the taxes on the house due for 2014 and had not paid any portion of the taxes for 2015. She did not think she was responsible for the 2014 and 2015 real-estate taxes "because there were two areas of the decree that state that it was [appellee's] responsibility." However, she admitted that the court had previously ordered her to pay the real-estate taxes and that "she was not getting the $27,500 a month just to pay the real estate tax" but "for child support."

She testified that she "made the first draft of the property list [herself]"; she denied

listing the Boulenger silver on her original list. She asserted that the silver "did not exist"

as the parties "never had any good silverware." She denied that there were other Railroad

Baron tables.[7] She noted that she took the bed linens that went with the beds; they had not

"put it in writing but [they] agreed in the property division that the linens that went with

the beds would go with the beds." She stated that she did take the two cast stone lions, but

averred that they agreed she would take the lions and the patio umbrellas in exchange for

not having to divide up the "extensive" list of patio furniture. She testified that the Kubota

tractor was purchased during the marriage with an American Express card held by the

parties—not with inheritance money of Moody Farms—and that she helped pick it out. It

was to be used at the marital residence, which was eight acres in size, by a groundskeeper

they had hired a month prior to the purchase. She wanted the value of the tractor, which

she believed was valued at $17,000; it was purchased for $17,160.

The circuit court entered an order on February 25, 2016, making the following

findings:

> a. <u>Boulenger stainless silver flatware</u>. The Plaintiff claims that the silverware never existed and that they had no silver flatware. The Defendant claims that they purchased the flatware during the marriage. Ms. Cindy Hall, the interior decorator, said that she saw the flatware in a box in a closet when the parties were dividing the assets. She then testified that after the Plaintiff had vacated the premises and removed her property, that there was no Boulenger silver flatware left at the home.

> b. The Court concludes that Ms. Hall is a credible witness and has no vested interest in this case. The Court finds that either the Plaintiff removed the flatware or it was lost while in her control. The Court orders that Plaintiff reimburse the Defendant the sum of $8,050.00 forthwith representing one-half of the value placed

---

[7]She referred to them as both chests and tables during her testimony.

on the flatware; or if the flatware is located in her possession, in lieu of payment, that she may return one-half to the Defendant. Neither Plaintiff's Exhibit 6 nor Defendant's Exhibit 1 divided the flatware.

. . . .

     f. <u>Lenox China</u>. Originally, the parties had a 12-place setting. The [Plaintiff] took eight of the sets leaving the Defendant four. The Plaintiff is to return two place settings of bone Lenox China to the Defendant forthwith.

     g. <u>Kubota tractor</u>. This property was not mentioned in the Divorce Decree nor in the list of property to be divided. The Kubota tractor will remain with the Defendant at the marital home as it was purchased for the marital home. Further, paragraph 16(B)6 states that all personal property currently in his possession shall become his sole and separate property. Therefore, the Plaintiff's claim fails.

     h. <u>Lions</u>. These items were not listed on the property lists. The parties will each receive one lion statue. The Defendant will be responsible of having one of the lions delivered to him at his expense. The Defendant can select the lion he wants.

While noting that appellant had filed a motion for contempt involving an Oriental rug, the circuit court did not address the matter, stating that "the rug was never discussed" in the hearing. Regarding the taxes owed on the home, the circuit court stated:

     23. There appears to be a conflict within the Divorce Decree, but the Decree specifically states in paragraph 16(B)(1) that the Plaintiff was given until February 1, 2015 to vacate the residence. The Decree made a specific reference to the previous Orders of the Court that the Plaintiff be responsible for the utilities and other expenses associated with the marital residence until she vacates the marital home.

     24. The Court concludes that the parties negotiated a settlement whereby the Plaintiff would be responsible for the cost of the marital home while she remained living there. The parties specifically referenced the earlier Orders whereby the Plaintiff was responsible for real estate taxes as long as she received the $27,500.00 per month support. The Court finds that the Plaintiff is responsible for the payment of the 2014 real estate taxes in the amount of $13,059.20 and one month of the 2015 real estate taxes which is $1,088.26 for a total amount of $14,147.46. This amount shall be paid to the Defendant forthwith and he will be responsible for the direct payment of the taxes.

This timely appeal followed.

## I.    *Standard of Review*

Although we review traditional equity cases de novo, the test on review is whether we can say that the trial court's findings are clearly erroneous.[8] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake was made.[9] We defer to the trial court in making credibility determinations.[10] This court reviews the trial court's conclusion of law de novo.[11]

This court has long held that an independent property-settlement agreement, if approved by the circuit court and incorporated into the decree, may not be subsequently modified by the court.[12] When a contract is unambiguous, its construction is a question of law for the court and the intent of the parties is not relevant.[13] The parties here were represented by able counsel and entered into the contract voluntarily, so it must be enforced.

---

[8]*Taylor v. Taylor*, 2009 Ark. App. 605, at 6, 343 S.W.3d 335, 338 (citing *Statler v. Painter*, 84 Ark. App. 114, 133 S.W.3d 425 (2003)).

[9]*Id.* (citing *A.R. v. Brown*, 103 Ark. App. 1, 285 S.W.3d 716 (2008)).

[10]*Id.*, at 6, 343 S.W.3d at 338–39.

[11]*Fischer v. Fischer*, 2015 Ark. App. 116, at 3, 456 S.W.3d 779, 781 (citing *Houston v. Houston*, 67 Ark. App. 286, 999 S.W.2d 204 (1999)).

[12]*Id.* (citing J*ones v. Jones*, 26 Ark. App. 1, 4, 759 S.W.2d 42, 44 (1988)).

[13]*Id.* (citing *Kennedy v. Kennedy*, 53 Ark. App. 22, 918 S.W.2d 197 (1996)).

## II. *Taxes*

Appellant's first argument on appeal is that the circuit court erred in finding her responsible for the real estate taxes on the marital home that appellee received in the property-settlement agreement. This court does not agree.

The November 18, 2011 temporary order was expressly incorporated in the circuit court's June 11, 2013 order on a motion for relief and contempt by appellant. The November 18, 2011 temporary order stated therein:

> Defendant shall pay to Plaintiff, on or before the first of each month beginning on October 1, 2012, the sum of TWENTY SEVEN THOUSAND FIVE HUNDRED DOLLARS ($27,500.00) via direct deposit into Plaintiff's Bank of the Ozarks account ending 518. That sum shall represent the child support obligation owed to Plaintiff and payment for all expenses Defendant was ordered to pay under this Court's Temporary Order, including gas and electricity, fire insurance, home maintenance, *real property taxes for the Little Rock residence* (as specifically described herein below), pool services, trash services, pre-school tuition (beginning in school year 2013–2014 as specifically described below), and lawn maintenance. . . . Plaintiff shall be responsible for the 2012 Little Rock residence real property taxes for the months of October – December 2012 ($3,321.96) to be paid directly to the Pulaski County Treasurer by the due date in October 2013. Plaintiff shall be responsible for all Little Rock residence real property taxes from January 2013 forward until further order of this Court.[14]

The January 8, 2015 divorce decree states:

> The Plaintiff is given until February 1, 2015 to vacate the residence at 10 Thomas Circle, Little Rock, Arkansas. Plaintiff shall be solely responsible for the utilities *and other expenses associated with the marital residence as previously ordered by this Court* until she vacates the marital home.[15] Defendant shall not be responsible for any charges or costs related to the marital home that Plaintiff incurs during this time.

---

[14](Emphasis added.)

[15](Emphasis added.)

The decree also reduced appellee's child-support obligation to $12,000.00 per month beginning February 1, 2015, and awarded appellant an additional $8,000.00 in child support for the month of January 2015 only "based on [appellant's] assumption of expenses related to the marital home, pursuant to the parties' agreement."

Despite appellant's argument that the circuit court erred in finding that the language in the agreement is ambiguous, it is clear that the circuit court did not make such a finding, stating in its February 25, 2016 order only that "[t]here appears to be a conflict within the Divorce Decree[.]" It stated that the parties "specifically referenced the earlier Orders whereby [appellant] was responsible for [real-]estate taxes as long as she received the $27,500.00 per month support" and found appellant responsible for the real-estate taxes on the home for the year of 2014 and the month of January 2015. Because it is clear from the plain language of the divorce decree that the parties agreed—as testified to by appellee— that appellant would receive an increased amount of support for the duration of her stay in the marital home for the express purpose of paying certain expenses, inclusive of the martial home's real-estate taxes, in addition to child support, we find no error.

### III. *Flatware*

Appellant's second argument on appeal is that the circuit court's silver flatware ruling was reversible error. Appellant's arguments on this point are that the testimony was inconsistent, biased, implausible, and unsupported by credible evidence. Appellee, Griffis, and Hall testified that they saw the flatware in a closet in the marital home before appellant vacated the home, and that the flatware was not in the home thereafter. The circuit court expressly found Hall to be a credible witness with "no vested interest in [the] case." Since

appellant testified that the silver flatware did not exist, she is asking this court to reweigh the evidence and the credibility given to it. Circuit courts are charged with making factual findings and assessing credibility.[16] This court gives due deference to the circuit court's superior position to determine the credibility of witnesses and the weight to be given to their testimony.[17] This court has the authority to reverse those findings only when left with a firm conviction that the circuit court made a mistake.[18] We do not have a firm conviction that a mistake has been made.

Appellant also argues under this point that the circuit court erred in crediting appellee's groundless and arbitrary valuation of the silver flatware. At no point during the hearing, or in any motion, did appellant raise this argument.[19] Furthermore, appellant does not assert any legal authority to support this argument. This court may refuse to consider an argument where appellant fails to cite any legal authority, and the failure to cite authority or make a convincing argument is sufficient reason for affirmance.[20]

---

[16]*Branch v. Branch*, 2016 Ark. App. 613, at 6, 508 S.W.3d 911, 915.

[17]*Id.* (citing *Skokos v. Skokos*, 344 Ark. 420, 40 S.W.3d 768 (2001)).

[18]*Id.* (citing *Norman v. Norman*, 342 Ark. 493, 30 S.W.3d 83 (2000)).

[19]*Foster v. Foster*, 2010 Ark. App. 594, at 11, 377 S.W.3d 497, 505 (citing *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007) ("[W]e will not entertain arguments on appeal that were not raised before the trial court.")).

[20]*Jewell v. Fletcher*, 2010 Ark. 195, at 24, 377 S.W.3d 176, 191 (citing *Middleton v. Lockhart*, 344 Ark. 572, 43 S.W.3d 113 (2001)).

IV. *Lion Statues*

Appellant's third argument on appeal is that the circuit court erred in splitting the lion statues. She asserts that the circuit court's ruling was "contrary to the facts" and "inconsistent with [its] ruling concerning the Kubota Tractor"; however, she provides no legal authority to support either argument. The failure to cite authority is sufficient reason to affirm the circuit court's ruling on this point.[21] However, this court will note that Arkansas Code Annotated section 9-12-315(a) provides that "[a]ll marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable."[22] By virtue of its ruling, the circuit court obviously found splitting the lion statues to be equitable. This court cannot find that it erred in doing so.

V. *Kubota Tractor*

Appellant's fourth argument on appeal is that she is entitled to the full value of the Kubota tractor.[23] Appellant argues that the rationale of the tractor being "purchased for the

---

[21]*Kelly v. Kelly*, 2014 Ark. 543, at 12, 453 S.W.3d 655, 663 (citing *Nielsen v. Berger-Nielsen*, 347 Ark. 996, 69 S.W.3d 414 (2002)).

[22]*Dew v. Dew*, 2012 Ark. App. 122, at 7, 390 S.W.3d 764, 769 (citing Ark. Code Ann. § 9-12-315(a) (Repl. 2009)).

[23]Appellant argues first that the tractor was on the property-division list. We note that despite the circuit court's assertion that the tractor was not on the property-division list, the tractor was on the list, being identified by appellee as nonmarital property and being chosen by appellant pursuant to the property division, while noting that appellee claimed the tractor was nonmarital. The assertion that the tractor was not on the property list was not clearly erroneous because the circuit court's order does not appear to rely on the fact that the tractor was allegedly not on the list in making its decision.

home is both inconsistent and improper"; and that she should have gotten the tractor because it was in her possession—not appellee's—at the time of the decree.

We review divorce cases de novo.[24] With respect to the division of property in a divorce case, we review the court's findings of fact and affirm them unless they are clearly erroneous, or against the preponderance of the evidence; the division of property itself is also reviewed, and the same standard applies.[25] We give due deference to the trial court's superior position to determine the credibility of witnesses and the weight to be given their testimony.[26] In order to demonstrate that the circuit court's ruling was erroneous, the appellant must show that the circuit court abused its discretion by making a decision that was arbitrary or groundless.[27]

Arkansas Code Annotated section 9-12-315(a) provides that all marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable.[28] The court may make some other division that it deems equitable; however, when it decides not to divide the property equally between the parties, it must recite its basis and reasons for the unequal division in its order.[29]

---

[24]*Fields v. Fields*, 2015 Ark. App. 143, at 2, 457 S.W.3d 301, 304 (citing *Skokos v. Skokos*, 344 Ark. 420, 425, 40 S.W.3d 768, 771 (2001)).

[25]*Id*. at 2–3, 457 S.W.3d at 304 (citing *Skokos*, at 425, 40 S.W.3d at 772).

[26]*Id*. at 3, 457 S.W.3d at 304.

[27]*Kelly*, 2014 Ark. 543, at 5–6, 453 S.W.3d at 660 (citing *Hernandez v. Hernandez*, 371 Ark. 323, 265 S.W.3d 746 (2007)).

[28]*Johnson v. Johnson*, 2011 Ark. App. 276, at 8, 378 S.W.3d 889, 895 (2011).

[29]*Id*. at 8–9, 378 S.W.3d at 895.

Appellant testified that the tractor was purchased on April 21, 2011, during the marriage, with the parties' American Express credit card at the Fiser Kubota Store, after the parties had hired a groundskeeper for the marital residence in March 2011. She submitted into evidence an American Express "2011 Year-End Summary" that showed a purchase was made from "FISER TRUCK AND TRACALEXANDER AR" on April 21, 2011, for $17,160.00; appellee did not object to admission of the summary. Appellee provided no testimony regarding the tractor; however, he argued in pleadings below that he "purchased the Kubota tractor in May 2011 with funds from [his] mother and [appellant] has no marital interest." No evidence was submitted to support appellee's assertion. Regarding personal property, the divorce decree stated that division should be made as follows:

> [T]he parties shall agree on a division of the marital property at the above-mentioned residences as follows. The parties shall divide the marital personal property by alternating picks from a master list until all personal property has been chosen. If the parties are unable to divide marital personal property, same should be sold at public sale on the petition for the same by either party, but in any event not later than March 15, 2015.

The burden was on appellee to establish that the property was his separate nonmarital property,[30] and this court cannot hold that he met his burden; therefore, the tractor is marital property. The only evidence of the value of the tractor is appellant's testimony and the American Express "2011 Year-End Summary." Accordingly, we reverse on this point.

---

[30]*Johnson v. Johnson*, 2011 Ark. App. 276, at 8, 378 S.W.3d 889, 895 (citing *Davis v. Davis*, 79 Ark. App. 178, 84 S.W.3d 447 (2002)).



## VI. *Ruling without Testimony*

Appellant's fifth argument is that the circuit court erred in ruling on the appellant's contempt motion relating to appellee's parental neglect without taking testimony, stating that:

> Due to the short nature of the hearing, and the trial court's admonition that there would be no continuance or further hearing on the pending matters, the trial court was not provided any evidence or testimony on those pending contempt matters. The trial court acknowledged that testimony and evidence were not submitted on some issues due to the time constraints. Nevertheless, the trial court "dismissed" the contempt motion and cautioned both parties to make sure that the child is safe.

She argues that that particular contempt motion was "most important because it concerned the care and wellbeing" of the parties' child. However, she provided no testimony on the matter; neither did appellee. This court notes that the circuit court did not deny appellant an opportunity to testify regarding the neglect allegations in her motion, but simply stated that the matter would "finish at 4:30" and that the court "[was not] going a minute longer and we're not resetting[.]" Because appellant provided no testimony or evidence in support of her contempt motion, this court cannot find that the circuit erred in dismissing the same.

## VII. *Harassing and Annoying Filings*

Appellant's final argument is that the circuit court erred by denying her motion for contempt for appellee's "harassing and annoying filings." The substance of this argument is that appellee "filed multiple frivolous, petty, and harassing claims in his motions for contempt" that were "not worthy of the trial court's time[.]" Disobedience of any valid judgment, order, or decree of a court having jurisdiction to enter it may constitute

contempt, and punishment for such contempt is an inherent power of the court.[31]

Disobedience must be willful.[32] Furthermore, her argument relies solely on her perception of appellee's filings as harassing and annoying and her personal determination of what was worthy of the circuit court's time. She provides no evidence that appellee's filings were willfully disobedient of any court order. This court does not weigh or make credibility determinations.[33] Furthermore, noting again that the circuit court did not limit what motions could be addressed—where appellant specifically listed this motion when the circuit court asked what would be addressed at the hearing—and that appellant did not provide any testimony below with regard to this contempt motion, we again hold that there was no clear error.

Affirmed in part; reversed in part.

VIRDEN and KLAPPENBACH, JJ., agree.

*Wright Law Firm*, by: *Victor D. "Trey" Wright III*, for appellant.

*Judson C. Kidd*, for appellee.

---

[31]*Balcom v. Crain*, 2016 Ark. App. 313, at 3, 496 S.W.3d 405, 407 (citing *Brock v. Eubanks*, 102 Ark. App. 165, 288 S.W.3d 272 (2008)).

[32]*Erskin v. Stout*, 2015 Ark. App. 533, at 10, 472 S.W.3d 159, 165 (citing *Kilman v. Kennard*, 2011 Ark. App. 454, at 7, 384 S.W.3d 647, 651).

[33]*Downum v. Downum*, 101 Ark. App. 243, 257, 274 S.W.3d 349, 359 (2008) (citing *Hunt v. Perry*, 357 Ark. 224, 162 S.W.3d 891 (2004); *Word v. Remick*, 75 Ark. App. 390, 58 S.W.3d 422 (2001) ("our supreme court and this court have often declared that we accord deference to the superior position of trial judges in determining the credibility of witnesses and the weight to be given their testimony.")).